Jacobs Engineering Group, Inc, f Good morning, Your Honors. Kenneth Willis, representing Timothy Patton. I would like to start off addressing the pertinent issues that are before the court. One, the first issue is whether the district court erred in deciding that Mr. Patton failed to exhaust his administrative remedy. To jump right into this, Mr. Patton, back in 2012, I'm sorry, 2014, filed a claim with the EEOC. This happened on May of 2014. He filed an intake questionnaire. This intake questionnaire was designed by the EEOC office. In the questions, in the intake questionnaire, there were specific questions that elicited whether Mr. Patton had a disability and whether he requested for an assistance with that disability. Mr. Patton cited, he stated in that form that he requested, he had a disability. It was stuttering, it was related to noise sensitivity, as well as his anxiety. He also stated that he requested for assistance with his employer at the time. He was a contract employee that worked at Jacobs, but he worked for Taliesin. He stated in his intake questionnaire that he asked for assistance, and assistance was not provided for him. The same day, he filed a charge with the EEOC on May 7th of 2014. In that charge, he checked the box of discrimination disability, and he stated a brief, made a brief statement of the nature of those charges. Later, on September 30th, 2014, Mr. Patton filed an amended charge. In that charge, he attached an amendment of specific allegations that led to his discrimination claim. In that discrimination claim, he alleged facts of anti-discrimination based on harassment, and he also elicited facts about noise in the employer's, Jacobs and Taliesin's, failure to accommodate. He didn't use that language, but he talked about the noise, he talked about the request to stop the noise, and he also talked about the anti-harassment allegations. Your Honor, we argue that the court erred for finding that Mr. Patton failed to exhaust his administrative remedy based on his filings. Looking at the totality of the filings, we assert that Mr. Patton exhausted his claims with the EEOC. We cited a Supreme Court case, Federal Express versus Holowecki. That case addressed the, whether or not, what is a charge? We rely on that case because in this particular case, it addressed similar questions. What is a charge? In the Holowecki case, it asks, is there a request for an action? The Holowecki case contemplated an intake questionnaire back in 2001. It addressed, it foreshadowed that potentially the EEOC office should tweak its intake questionnaire form. And in fact, EEOC did change its intake questionnaire form. The form in which Mr. Patton filed, there was a specific request, there was two boxes, box one and box two. The first box simply stated, if you're interested in filing a claim, then check this box, but by no means, this means you're filing a charge. The second box states, if you are filing a charge, check this box and you are giving notice, you now acknowledge that you are giving notice to the employers. Mr. Patton checked the second box. We believe that it's pertinent in this case because that request was for the EEOC to take action. The jurisprudence states that when you're looking at the actual complaint, the charge, oftentimes you can look beyond the four corners of that charge. We're asking for the court, based on the Holowecki case, to look behind the four corners of the charge and also look at the intake questionnaire. However, if we do focus on the charge, we ask the court to focus on the amended charge in which Mr. Patton specifically stated in his attachment, he made noise complaints, it affected his anxiety, it affected his stuttering, and the employers, Jacobs and Taliesin, did nothing about it. Your Honor, I didn't state that I would like to reserve five minutes for rebuttal. Okay, you've certainly done so, Mr. Willis. And so, we rely on the Holowecki case and we want to remind the court that the court has to take a liberal, liberally construe whether or not there was a failure to accommodate in looking at the charge. Mr. Charge, Mr. Patton made his complaint. The defendants in this case made. I understand what you're talking about. Mr. Patton's disability is stuttering, correct? Yes, sir. And stuttering actually had no effect on the job that he was doing, is that correct? That's actually not correct. Okay, how did stuttering have an effect on the job that he did? Mr. Patton had a stutter condition. That's his disability? Yes, sir. There was a noise environment at work at the Jacobs premises. The noisy environment caused Mr. Patton anxiety. All right, now, but did the noise have anything to do with his disability? Yes, it did, Your Honor. The anxiety from the noise caused him to stutter even more. All right, and did that affect his ability to perform the job? I thought he got good marks as an employee all along. Your Honor, it is true that the employer stated that he did well. Mr. Patton's resiliency should not be considered in this case because despite his ability to do well, he was affected at his job. The transcript reflects that there were times when Mr. Patton could not even make it to work. He averaged 40 hours, then there was times when he worked 20 hours. Then he worked about 14 hours. His inability was not because of his stuttering, but because of his anxiety, which resulted from noise, which created anxiety that made his stuttering worse. I mean, I can't quite understand your claim. Yes, Your Honor, it was a vicious cycle. What we're saying is Timothy always made complaints about the noise. He made complaints to Taliesin's supervisors as well as Jacob's supervisor. Did he make it clear to his supervisors that that noise made his stuttering worse? Or did he just say, you know, I can't work in loud places. I need some peace and quiet to be able to do my work. Did he ever relate it to the fact that it made his stuttering worse? He made it very clear on multiple occasions, Your Honor. On one instance, with respect to Taliesin, when he initially was employed, he talked to Emberly Wembley, who was a Taliesin recruiter via phone. He told Ms. Wembley that he has an issue with his anxiety and his stuttering, and he's sensitive to noise. This is reflected in his testimony while he was deposed. He further states that at his previous employee, he had a similar problem. Then later, as he works at Jacob's, he has a private meeting with Jennifer Zaden, who is a supervisor for Taliesin. In that meeting, he's informed, he's talking about his complaints of noise, his anxiety, and his stuttering. Your Honor, the issue with that is, this is a private meeting. There's no witnesses to say who said what. Timothy is saying what he disclosed to the employers. The employers are saying something different. We contest that that is a genuine issue of material fact. It's in dispute. The credibility of who- What is the disputed issue of material fact? That Mr. Patton disclosed several times to the employee of Taliesin as well as Jacob's his stuttering condition, which was exacerbated by the noise environment from his anxiety. At numerous times, he stated that to Taliesin as well as Jacob's employees. I want to focus on specific instances where Mr. Patton sat with the department manager at Jacob's, three private occasions. The department manager himself testified during the deposition and stated that this was a private meeting on three separate occasions. It lasts about anywhere from 10 to 20 minutes. Mr. Patton stated during that meeting, he's expressing to his department manager. What was the noise now that he was complaining about? There was an environment at Jacob's that most people would say a normal noisy environment. It's typical. Mr. Patton's perception- I mean, people talking, machines running, what was it? People talking, machines running. There also, Timothy would explain it as it was more than necessary at times. What did he suggest any kind of effort that the employer might engage in that would reduce the noise to a level that was acceptable to him? Yes, he requested simply to be removed to another location, another work site, or another floor where it wasn't as noisy. What was the difference between the floors? I mean, different work going on or what? Mr. Patton simply requested that if he could be in somewhat of a private room free from all the noise and still be able to do his work, that would be something amenable to him. He expressed that on numerous occasions to Taliesin as well as Jacob. He was working in a big group and not an individual office. Yes, that's correct, Your Honor. And did other persons perform in the same work that he have had? Did any of them have offices that they performed their work in? Private offices? No, sir, Your Honor, but these individuals. So he is putting the best face on it. He is requesting an accommodation that he be put into a private office to avoid noise. Not necessarily a private. I'm sorry, I may have misstated. Not necessarily a private office, but a quieter work area. That work area could have been somewhere separated from the group or the environment in which he was working in. Did he designate a particular place that he wanted to be sent where there was less noise? There was a time where he spoke to representatives of Taliesin who stated that they would consider sending him to another job location to perhaps do even another job. And at that point, that communication ceased. So Mr. Patton was making diligent efforts to request for an accommodation, and we can contend that there were times pretty much throughout the entire time that Jacobs as well as Taliesin employees somewhat did not take too much of account to what transpired and what Mr. Patton was experiencing at the time. What efforts were made to accommodate him? Didn't they offer him earplugs or was there something else? Yes, Taliesin as well as Jacobs state that they offered Mr. Patton earplugs. In fact, that's not true. Mr. Patton, he utilized earplugs on his own. There were earplugs that were in the office at Jacobs, but his coworker found the earplugs and he utilized them. They also asked him to use music earphones. The problem with that, Your Honor, was when he used the music, the music would be, he would turn the volume loud to tune out the noise, and he still would not be able to concentrate. And that was the problem that he was having. I'm having a problem with this case in terms of his disability that he is wanting to accommodate is anxiety. It has nothing to do with stuttering. It triggers his stuttering. It has nothing to do, his disability is anxiety. His disability is not stuttering as far as the job is concerned. He's not asking for accommodation on his stuttering. I'm not asking you to accommodate in a way my stuttering affects. I'm asking you to accommodate my anxiety. And yes, Your Honor. Which in turn affects stuttering, but stuttering has nothing to do with my disability that I'm complaining about. And yes, Your Honor, we would point to the record. There are times where he would specifically talk about his anxiety, which would exacerbate his stuttering. He made that clear. He made it clear about his stuttering. He made it clear about his anxiety. I mean, his stuttering doesn't seem to be a disability. Doesn't seem to be a job, has no relationship to his job. Your Honor, if I may, the private conversation with Mr. Patton and the department manager, he is, the department manager is explaining there's, Mr. Patton is anxious while talking to him. He's talking about his anxious, his anxiety. He's expressing that to the department manager. The department manager met with him on three times. And we're gonna- His disability is his anxiety. That's all. The way you phrased it. Yes, Your Honor. I would reserve my time for rebuttal. Okay, thank you, Mr. Willis. Thank you. Yes, sir. Ms. Walker, representing Jacobs Engineering. Thank you, Your Honor. Good morning. If it please the court, my name's Marion Walker. I'm with Fisher Phillips, and we represent Jacobs Engineering Group. If the court please, the lower court got this case right, and it should be affirmed in all respects. In the first position, first argument that plaintiff has brought up, appellant, is this issue of EEOC exhaustion. Let us be clear. At no point did Mr. Patton in his argument, in his first opening brief, bring up Holowicki. At nowhere has he tried to show how Holowicki applies except in reply, and by the way, Holowicki does not apply in this case, if the court please. Holowicki has to do with finding an EEOC intake questionnaire being appropriate where there's a question of timing as to whether or not the complainant actually timely filed a charge with the EEOC. That case is not what is going on here. The EEOC accepted an EEOC intake questionnaire and the charge of May 7 on the same day. In Holowicki, it was months apart and resulted in a question of failure to file timely. That's not the question here. Secondly, in the case of this EEOC exhaustion, plaintiff didn't bring it up, but it does appear that the Fifth Circuit stands alone and not very clearly holding that subject matter jurisdiction arises from appropriate filing with the EEOC. And Jacob submits that this is a case in which this court, in affirming, can acknowledge that there is no subject matter jurisdiction where EEOC exhaustion has not been properly obtained. And that is the case here. And that is why the lower court found that exhaustion was a problem for the failure to accommodate claim. Nowhere in the charge is there any reference to a failure to accommodate claim. Yes, the box disability is checked, and then the charge goes on to talk about harassment based on disability. So there's never any notice to the defendant. What is a disability? Well, he claimed stuttering was his disability until the complaint came out, in which event he claimed childhood onset disfluency was the disability. What is that? What's that? Well, this is what we understand is stuttering based on a diagnosis he received after his wreck and after he was no longer employed with Jacob's. Well, I mean, it's just a technical name for stuttering. That's what we understand, Your Honor. Sorry, I mean, he's making the same claim, but his claim, his claim here is his disability is anxiety. That's right. That's what he's asking to be accommodated. He's not asking him to accommodate his stuttering because, as far as I can see, that his stuttering needs no accommodation to perform his job well, because it has nothing directly to do with his job. Well, as a matter of fact, Judge, we contend that there was no request for an accommodation. There was simply- There was. What is the, I mean, he did apparently request to be moved. I mean, do you dispute that? We do not dispute it. He asked for a quarter area. So, I mean, he is asking for accommodation for his anxiety. Well, we didn't have any information that he had anxiety to the point he needed to be accommodated. And once again, that's the burden of the plaintiff to come tell us, to tell Jacobs. He says that he told you. Well- In a private one-to-one meeting, that he said that the noise was making him nervous. Well, if he did say the noise is making him nervous, and we will assume that for the sake of this argument, he is not impressing upon Jacobs the fact that this is a disability for which he needs accommodation to perform his job. The problem is that until just, I heard it now, he didn't connect up the dots. He didn't say the noise causes me anxiety, which in turn increases the stuttering. Is that the problem here? Yes, Your Honor. That is a problem because we are defenseless in our lack of knowledge. And that is, when he asked for a quieter area, and all the employees- He's not asking to accommodate stuttering. Correct, he was not. I mean, how do you accommodate stuttering in a job where stuttering has no relation to job performance? That's what I'm having a problem understanding. We have too, Your Honor. We've had that very problem. I understand anxiety. I mean, I can understand that quite well as a disability, as the malady that needed accommodating so he could perform his work better. He never claimed anxiety was a disability, nor did he ever put Jacobs on notice that he suffered from an anxiety to such an extent that he needed to be accommodated. And as it was, he complained about the noise, and we addressed it. In fact, Mr. Guillory, the department head, made trips up to the floor to see what was going on, and his colleagues said 25% of the people were wearing earplugs or noise-canceling headphones, a pair of which he himself had. And this is a cube film, and it's gonna be noisy from time to time. The stuttering was central to the claim of the workforce. Harris, the, what do you call it? What kind of work? The hostile environment? Hostile environment. Yes, Your Honor. Because they said that his fellow students, fellow workers were making fun of him and made him, hostile environment directed to his disability of stuttering. I understand that. Well, there were some references that he made that there was mocking of him. And as to... Mocking of him because of his disability. And he asked, this is a hostile working force, and I'm asking you to do something about it, if he had. But as I understand it, there's no question that you had a program that was set out so that anybody that had any complaint about a hostile working environment could make complaints to management, and they would address it, and he never made that complaint. Is that correct? That's absolutely correct, Your Honor, but he never did complain and ask for any sort of accommodation regarding hostile environment. We never heard, Jacob's never heard of any of these claims, but until after he was no longer working there. And the minute we received any information about that, we instituted an investigation. And it's from that investigation that any facts in this case arose. Plaintiff didn't take the deposition of anybody to shore up a hostile environment case. And he merely makes allegations that aren't backed up by the name of somebody who said something, a date it was said. So we're left helpless with these general allegations, as the lower court found, that don't specifically invoke this claim of hostile environment or harassment. And moreover, there was no adverse employment action here. And we've asked him for that in deposition, and he had every opportunity to present one to the lower court, and he never did. We acknowledge the lower court did not make its ruling on the lack of an adverse employment action, but this court can. And it doesn't have to, of course, but it certainly is the law. And we have been asked to come and defend this case without any reference to an adverse employment action at any time. Hostile environment claim, secondarily, fails to meet the objective severity, I'm sorry, test set out in Shepard, 1999 in this court. An adverse employment action has to do with it. Disability claim, I guess it does to some extent. But if you translated that into the facts that we've been told, I mean, it would be an adverse employment action if they refused to move him to a quiet environment. I mean, he is alleging an adverse employment action. Well, he has not alleged that to Jacobs, so they could take action at the time. He barely- He says he did. Well, I don't know when he said that, because we don't have anywhere in the record that he said that. Lawyer said he said it, and he said it, his lawyer was right there when he said it. And we have asked, if the court please, you will note in our brief, we have pointed out references to the record are completely lacking with respect to a lot of references made by Mr. Patton. And additionally, there's no citation to any case law as well. But the information we had was that he wanted a quieter area. He didn't associate it with anxiety, with hostility, or with a disability. Thank you. Thank you, Ms. Walker. Mr. Landry, we'll hear from you. Good morning, your honors. May it please the court, my name is Jeremy Landry. I have the pleasure of representing Towson LLC, the staffing company and employer of Mr. Patton. I'll first briefly address, we agree with Jacob's position on the administrative exhaustion issue. I would just add that if you look at the plaintiff's argument, it ignores the Title VII requirement that the defendant receive notice of his claim. Number two, it ignores the Title VII requirement that the EEOC engage in conciliatory efforts to try to informally resolve. Did the EEOC investigate the issue, though? Based on the record, all I know is that Towson did not receive notice of his claim, of his failure to accommodate claim. But EEOC received a complaint, and they investigated the failure to accommodate, didn't they? Not based on the charge that we received. I mean, that's our argument, that that argument, that that claim was not in the charge. And Judge King, as you mentioned, the plaintiff failed to connect the dots in that charge, even as amended. So we were not put on- Did the EEOC serve you with the charge? We received the charge, yes, sir. And what did the charge claim? The charge claimed a hostile work environment. And that's all? That's what we contend, sir. And, well, is that what the charge did in writing? What did the writing on the charge say? Writing on the charge talked about a harassing workplace environment that involved an environment that could not be remedied, that involved rampant hazing and bullying in relation to his stuttering disability and other claims of sexual harassment and discussions about his physical appearance. But nowhere in that charge does he connect the dots- Did the EEOC investigate? Based on what information that Towson received was a charge that discussed hostile work environment. And that was what we were put on notice for. Well, usually, I mean, the EEOC sometimes just never investigates. And they send a 60-day, 60-day letter or whatever it is, to the, 90-day letter, whatever it is, to the charging party saying, we're not going to investigate this case, but you can go ahead and file a lawsuit. Is that what happened here? I'm not quite sure exactly whether or not they investigated the claim, but our contention is that we were not put on notice of his failure to accommodate a claim. I'd also add that even under Holowiki, Holowiki does not contemplate that every completed charge will constitute, excuse me, not every completed intake questionnaire will constitute a charge of discrimination. I think if you look at the facts of this case, the Holowiki standard basically says that if you check box two, that's not the Holowiki standard, that's the plaintiff's position. If you check box two, it indicates a request for agency action. But in this case, if you looked at the facts, although he checked box two, his subsequent conduct in filing an amended charge that doesn't include a failure to accommodate claim as his last expression to the EEOC clearly shows that he only intended to file a hostile work environment claim to the exclusion of his failure to accommodate claim. Now I'd like to move on to Taliesin's argument that the plaintiff failed to file a timely charge of discrimination as it relates to his failure to accommodate claim. The plaintiff had 300 days to file his claim, but he failed to do that. And I'll briefly describe the facts supporting that argument. Between December of 2012 and March of 2013, he made requests that Taliesin help him with noise concerns he had at the Jacobs facility. One of those requests was that he be placed at another facility or another job outside of Jacobs. He was offered that possibility. He then rejected that possibility of job re-assignment. At the time he rejected this offer, which is March 2013, he began to describe his complaints of noise as some form of harassment being carried over from a prior employer. He was asked whether or not he wanted to file a formal charge of discrimination. He indicated that he wanted to. He was given information to call HR, including the HR number. His testimony revealed that he did call HR and left a voicemail. On April 30th, I guess a month and a half later, the Taliesin recruiter sends him an email and checks up on him. Hey, how are you doing? I wanna see how you're doing, see if you're okay. He responds back on May 28th, 2013, a month and maybe a week later, and says, I have not heard back from HR regarding filing a complaint. So she immediately, that day, sends him an email and says, here's the information to contact HR. You need to call them specifically. Here's the number. Now, after this date, there's no dispute that he did not call HR after May 28th, 2013, and there's no dispute that he did not request an additional accommodation to Taliesin after May 28th, 2013. It's also undisputed that by this time, he had concluded that Taliesin failed to accommodate his requests for his noise complaints because he concluded that they failed to give him a new job. However, he didn't file his EEOC charge until May 7th, 2014, some 344 days later. So clearly, his claim is untimely. And in his reply on appeal, he's argued that the continuing violations doctrine is applicable. He's wrong for three reasons. First reason is that the Fifth Circuit, under Wenhauser and under Henson, clearly recognize that a failure to accommodate claim is a discrete discriminatory act. And under the Frank decision cited by the plaintiff in the Fifth Circuit case, discrete discriminatory acts are not entitled to protection under the continuing violations doctrine. That's reason number one. Reason number two, the continuing violations doctrine applies to conduct or discriminatory conduct that manifests itself over time. Well, there's nothing hidden about this situation. He made requests. He was offered a job position or the possibility of a job position. He rejected that offer, and then he failed to communicate with the client thereafter, excuse me, with Taliesin thereafter. The third reason is that for continuing violations doctrine, he must show that there was a series of related acts. And with one of those related acts occurring within the limitations period. But it's not disputed that he did not request an accommodation during the limitations period. So he cannot make that argument because there's no related act that occurred within the limitations period. His brief seems to imply that the mere continuation of the denial back in 2013, between 2012 and 2013, before the limitations period is equivalent to, that continuation of denial is equivalent to related acts. That's not what the case law holds. Under Mack and Messer, the mere perpetuation of discriminatory, of the effects of discriminatory decisions are not related acts. So therefore, the continuing violations doctrine does not apply in that case either. So for these reasons, his claim as to Taliesin's failure to accommodate claim was untimely. And we ask that the court affirm the lower court's decision and assess all costs against plaintiff. Okay. Thank you, Mr. Landry. Thank you. Mr. Willis, you've saved some time for rebuttal. To address Your Honor's question of whether there was an investigation of the EEOC, Taliesin and as well as Jacobs are making a claim that they were prejudiced by lack of notice. However, there was no full blown investigation of this case. The investigation was short circuited by Mr. Patton's requests after the time period had lapsed that when EEOC confirmed that they would not investigate the entire case within a certain time period allowed by law. So the argument that there was a lack of notice should not prevail, Your Honor, because this was not a process where Mr. Patton circumvented the EEOC to get to court. It's just there was no full blown investigation. There was no opportunity to conciliate between both parties. There just was a time period where Mr. Patton exercised his right. The law generally is that whenever you file a complaint based on EEOC charge that you can allege things that are reasonably related to the underlying charge. It does not specifically be in the charge. That's correct, Your Honor. And we assert, Your Honor, that Taliesin as well as Jacobs argued that they were not put on notice about the noise and the sensitivity to noise in Mr. Patton's anxiety and stuttering from the charge that they received. However, in Mr. Patton's amended charge, he attached to the six page attachment which talks about the noise and the complaints he made about the noise. I understand the court's concern about connecting the dots. Mr. Patton initially has a stuttering condition. Mr. Patton made it clear to both employers, he stutters, the noise causes his anxiety, the anxiety causes him to stutter even more. The stutter causes him more anxiety. It was a vicious cycle and he's trying to articulate that to both employees, Taliesin employees as well as Jacobs employees. And Your Honor, we would cite the Conene versus MNBA case in which the court stated that the employer has at least a duty to meet the employee halfway. If the employee is not fully articulating his grievance but he's trying to provide information to the employer, at some point, when does the employee, it is incumbent upon the employer to make a good faith effort and address his grievances. I will point to numerous periods and we cited in our brief in which Mr. Patton sat down with Taliesin employees to attempt to articulate his stuttering, his anxiety and his sensitivity to noise. Now, if the employers were not aware of that or they could not understand that, perhaps they could have asked for medical records. Perhaps they could have talked more about trying to ascertain precisely what his problem was. They failed to do that. I want to address the three meetings. I want to make strong emphasis on the three meetings where Mr. Patton is having a conversation, a private conversation with the department manager of Jacobs. This department manager testified that he had a stuttering problem. Mr. Patton is stuttering and he's anxious on three different occasions in that meeting. That meeting is lasting anywhere from 10 to 20 minutes. And he's trying to articulate, he's trying to connect the dots. He's telling them the noise is causing him to stutter more because of his anxiety. Let me ask you, what relief do you want in this case? He no longer works for either of the employers. He was not discharged or terminated. He had a wreck apparently and injured himself. If it's a reason, he ceased employment. So if we rule in your favor, what relief do we give Mr. Patton? Your Honor, we would ask for back pay for all the time he missed while working at Taliesin and Jacobs. The automobile accident was directly related to a panic attack in which he was under anxiety. He was on his way to North Carolina, his home, because he just experienced a mountain and a domino effect of the anxiety that he was experiencing at his job in which the employers were not addressing. So he's on his way to North Carolina. He has a panic attack because of this anxiety. And he gets into an automobile accident. We would ask that his inability to work for Taliesin and Jacobs is directly related to Jacobs and Taliesin's failure to address his accommodation. They become liable for his wreck, for the injuries to him, to his wreck, to the extent of his salary. We do contend that, Your Honor. And we also contend that most importantly, they are liable for his inability to go back to work, which is an extended amount of time. He's under the doctor's care now who are not allowing him to go back to work because of his stress environment. Because of his injuries, he suffered in the automobile accident. His physical as well as his mental issues that were exacerbated. I see. Thank you, Your Honors. Thank you, sir.